**Velma A. KOEPKE, Appellant,**

**v.**

**KOSS CONSTRUCTION COMPANY, a foreign corporation, and William Orville Prater, Respondents.**

**No. 52154.**

Supreme Court of Missouri, Division No. 1.

March 13, 1967.

Tweedie Fisher, Jefferson City, for appellant.

Northern & Crow, Rolla, for respondents.

HIGGINS, Commissioner.

Action for $25,000 damages for wrongful death. Verdict was directed for defendants at the close of plaintiff's case.

■ The only question is whether plaintiff made a submissible case for the jury and, in determining that issue, the evidence is to be considered in the light most favorable to plaintiff, giving her the benefit of all reasonable inferences. Brown v. Wooderson, Mo., 362 S.W.2d 525, 526 [1], 99 A. L.R.2d 894.

Plaintiff is the widow of Otto W. Koepke who died September 24, 1964, at the time of a collision between a motor vehicle driven by Mr. Koepke and a motor vehicle owned by defendant Koss, driven by defendant Prater. Plaintiff alleged that her husband was driving south on Highway No. 19, approximately three miles south of Owensville, Missouri, "commencing to make a left turn into a road and at said time and place defendant William Prater was operating a truck in a southerly direction and in such a manner as to carelessly and negligently cause or permit to cause the same to violently collide with the vehicle operated by plaintiff's husband * * *."

The specific negligence charged to defendants was failure to keep the Koss motor vehicle under control under the circumstances; excessive speed under the circumstances; failure to keep a lookout; and failure to give timely or adequate warning of the approach and movement of the vehicle.

Defendants admitted that Mr. Koepke died as a result of the collision and that the vehicle which collided with Mr. Koepke was owned by defendant Koss and operated by defendant Prater within the scope of his employment by defendant Koss.

Velma A. Koepke testified that she was the widow of Otto Koepke; that he died September 24, 1964; that she was his wife at the time of his death; that he was the sole support of her and their four children; that he earned between forty-five hundred and five thousand dollars a year; that he was 42 years of age at his death. She did not see or "know anything about the accident," but had talked to a Mrs. Souders who was an eyewitness. Mrs. Souders was not called to testify and the only other witness was Everett H. Cunio, a fellow employee of Mr. Koepke.

Mr. Cunio was a master mechanic employed at Owensville, Missouri, by Allied Chemical, General Chemical Division. On September 24, 1964, at "sometime after 10:-00 o'clock," he went to a scene on Highway 19 where two vehicles were involved in a collision. "I found our—our prospecting truck and this Koss Construction Company vehicle. * * * they were located just—just south of the gravel road where Mr. Koepke was intending to turn off and approximately, I would say, around four hundred feet from the mailbox that you were referring to a while ago in your talk." (Reference is to defendants' opening statement describing a "mailbox approximately three hundred to four hundred feet * * north of the driveway which the Koepke truck—into which the Koepke truck was attempting to turn.")

"Q. On which side of the road? A. On the left-hand side of the road.

"Q. And was there a turn-off there? A. Yes, there was.

"Q. * * * does this highway run generally north and south? A. Yes.

"Q. And which direction of the highway —of this turn-off—was this a gravel road? A. Yes.

"Q. And this was what, on the east or the west side? A. On the east side of the road."

Mr. Cunio found the vehicles south of the gravel road and, asked to describe the vehicles, testified:

"A. Well, if I recall, his—the tandem (the Koss vehicle) was almost—I guess you'd call it—not the tandem, but the flat

bed (decedent's vehicle) was going north and south, and the truck—the truck was facing east and west with the radiator towards the west.

"Q. Can you tell the jury whether that truck—whether the tractor or the trailer or both had evidence of damage? * * * A. Well, the truck, as well as I recall, this truck had the two separate fuel oil tanks torn off the side, and the—the truck was in the ditch towards the highway—closer to the highway, but it was facing the west; it was south of our truck, of our prospecting truck, and it was—of course, it was—the front end was damaged pretty bad where it had—* * * It was—the front end was damaged pretty bad and the—of course, naturally the trailer was torn from the—from the tractor.

"Q. What part of the front end was damaged? A. Well, as I recall, the right front."

He found the Koss truck "approximately twenty-five feet" south of the gravel road. The vehicle operated by Mr. Koepke "was setting north of the Koss Construction Company truck."

Mr. Cunio identified pictures of the two vehicles. One showed Koepke's flatbed truck with damage to the door and cab on the driver's side, the left front wheel torn from the axle, and a large "drill rig" fallen from the bed of the truck. It also showed that vehicle in its position somewhat parallel to the east side of the road heading north, with the Koss tractor to its rear damaged on its right front corner. The other picture was a close-up of damage to the flatbed truck.

Mr. Cunio talked with defendant Prater at the scene and he said he had been going south, as was Mr. Koepke.

"Q. Did Mr. Crater (Prater) tell you that he saw a turn indicator light on the rig Mr. Koepke was operating? A. He definitely did. * * *

"Q. Did you or did you not ask Mr. Crater—or Mr. Prater whether or not he saw— A. I did, yes. Q. —turn indicator lights on? A. I did, yes.

"Q. Did Mr. Prater answer you? A. He did, yes.

"Q. What was his answer? A. He says 'I saw the indicator lights on, the directional signals.'

"A. And did Mr. Prater say anything else to you? A. Yes, he did. He said, 'I didn't think he was going to turn left.'"

■ It would be helpful if plaintiff had adduced other evidence, if available, on matters mentioned in the opening statement, such as debris, and Prater's rate of speed, skid marks, and warning; even so, this evidence is sufficient to make a submissible case. A jury reasonably could find and infer that the deceased was operating his truck in a southerly direction on Highway 19 in a rural area south of Owensville; that he intended to turn left from the highway into a gravel road; that he signaled his intention to make such a turn by having his directional or turn signals operating; that he could make only a left turn because the gravel road made a "T" intersection with the highway and ran only to the east or left of the southbound plaintiff and defendant Prater; that defendant Prater was following to the rear of the decedent's truck in his heavy tractor-trailer tandem truck and saw the turn signals operating on decedent's truck; that, irrespective of that notice, he formed a judgment that decedent would not turn left; that the left side of decedent's vehicle was exposed as the left turn was being made; that decedent's path was then to the east or northbound side of the road and, while so exposed, decedent was struck on the left side of his truck by the right corner of defendants' following vehicle; that the speed of the following vehicle was such that a violent impact occurred doing substantial damage to, and carrying, both vehicles to the east side of the road and south of the intersection; that decedent's turn was completed to the extent that the directional force of the impact was far

enough to the rear of his truck that it turned the truck to a northbound heading just to the south of the intersection as it was shoved to the east side of the road; that Prater's speed was excessive under the circumstances in that he saw the turn warning, decided it did not mean what it said, and failed to stop or slow to avoid hitting decedent; that such excessive speed was the proximate cause of the collision. See Bear v. Devore, Mo.App., 176 S.W.2d 862, 864 [6]; Hillis v. Rice, Mo.App., 151 S.W.2d 717, 724 [4–6]; Block v. Rackers, Mo., 256 S.W.2d 760, 763 [4].

■ Respondents argue that Mr. Cunio's testimony was only that he saw *the* turn indicator lights on and that it could mean the right, as well as the left, signal. The permitted inference is reasonable, however, because only a left turn could be made at this location. Respondents question also where Prater was when he saw the turn signals operating and suggest that a reasonable inference is that Prater saw them just as he started around decedent, but such an inference is strained in view of his seeing the turn signals in his following position in time to form a judgment that he did not think the decedent was going to turn left and to decide to disregard such signal.

■ Respondents contend further that Mr. Koepke was contributorily negligent as a matter of law in failing to keep a proper lookout and turning to the left when such movement could not be made with reasonable safety. The evidence of this case does not present that issue as one upon which reasonable minds could not differ, and thus it would be for the jury to resolve under proper instruction.

Judgment reversed and cause remanded.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.